**Ulaska JACKSON, Jr., Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. KCD 29201, KCD 29231.**

Missouri Court of Appeals, Kansas City District.

Oct. 31, 1977.

Clifford A. Cohen, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Walter O. Theiss, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and PRITCHARD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Ulaska Jackson, Jr., a black man, was convicted of first degree felony murder (1972) by a Jackson County jury and sentenced to life imprisonment. Failing to obtain relief by way of direct appeal, *State v. Jackson,* 506 S.W.2d 424 (Mo.1974), he then resorted to Rule 27.26. Jackson's Rule 27.26 motion was denied by the trial court absent an evidentiary hearing.

A single point is urged by Jackson on appeal, namely, error on the part of the trial court in summarily denying his Rule 27.26 motion without an evidentiary hearing.

Disposition of Jackson's lone point pivots on whether the three "grounds" and the "facts" pleaded in support thereof in his Rule 27.26 motion, in conjunction with "the files and records of the case", "conclusively" show that "he was entitled to no relief". Rule. 27.26(e) provides, and *Smith v. State*, 513 S.W.2d 407, 411–12 (Mo.banc 1974), holds, that if the motion and the files and records of the case conclusively show that the movant is not entitled to relief, an evidentiary hearing is not required. Rule 27.26 motions which, upon examination with the "files and records of the case", present only issues of law, as is true *in the* instant case, represent classic examples of motions properly determinable without evidentiary hearings. *Hatfield v. State*, 529 S.W.2d 180 (Mo.App.1975); and *Meeks v. State*, 512 S.W.2d 215 (Mo.App.1974).

The three "grounds" and supportive "facts" alluded to, substantially condensed for sake of brevity, follow. *Ground one—supportive facts*: Jackson was convicted of an offense different from that for which he was indicted—Jackson was indicted for conventional first degree murder and convicted of first degree felony murder. *Ground two—supportive facts*: The trial court's failure to have instructed the jury on "lesser degrees of murder" constituted a denial of "equal protection" because such instructions are routinely given under "identical circumstances" in cases involving "white" defendants—"It is . . . a common fact that had the Movant been a 'white' defendant, tha n [sic] he would *of* [sic] received such lesser instructions . . . ." *Ground three—supportive facts*: Jackson was denied effective assistance of counsel because of the latter's failure to request the court to instruct the jury on the "defense of duress"—evidence was presented at the underlying trial "to the effect that he [Jackson] was acting under duress because the other persons that were involved stated that they would kill him if he did not do what they said to do."

As to Jackson's first ground, it is well established in Missouri that the state, upon satisfying the requirements of proof, may submit felony murder in the first degree notwithstanding the indictment or information under which the accused is being prosecuted charges only conventional murder in the first degree. *State v. Granberry*, 484 S.W.2d 295, 300 (Mo.banc 1972); *State v. Beal*, 470 S.W.2d 509, 511–12 (Mo.banc 1971); and *State v. Stancliff*, 467 S.W.2d 26, 33 (Mo.1971). The trial court was not obliged to grant Jackson an evidentiary hearing before ruling adversely to him on ground one.

As to Jackson's second ground, it is equally well established in Missouri that alleged errors pertaining to instructions are, by their very nature, treated as trial errors and generally deemed to be immune from collateral attack. *Brown v. State*, 492 S.W.2d 762 (Mo.1973); and *Tucker v. State*, 481 S.W.2d 10 (Mo.1972). More directly in point, Jackson's claim that the jury should have been instructed on "lesser degrees of murder", presumably second degree murder and manslaughter, lacks legal support. Where the evidence supports a finding that a homicide occurred during the commission of a felony enumerated in Sec. 559.010, RSMo 1969,[1] and no species of proof suggests or supports a conclusion that the homicide was committed otherwise than during the commission of one of the enumerated felonies, instructions on "lesser degrees of murder" are not warranted or required. *State v. Thomas*, 440 S.W.2d 467 (Mo.1969); *State v. Taylor*, 421 S.W.2d 310 (Mo.1967); and *State v. Kauffman*, 335 Mo. 611, 73 S.W.2d 217 (1934). The statement of facts set forth in the opinion affirming Jackson's conviction and sentence on direct appeal, *State v. Jackson*, supra, unequivocably demonstrates that the homicide was perpetrated during the commission of a rob-

---

1. Controlling and in effect at the time the offense in question was committed.

bery [2] and nothing is contained therein, or in the facts tendered by Jackson in support of his motion, to suggest or support a finding that the homicide was committed otherwise than during commission of the robbery. Stripped bare of conventional niceties, Jackson attempts to circumvent the well established principles just mentioned by making a blanket accusation that the trial bench of this state is habitually guilty of unmitigated racial prejudice in instructing juries in felony-murder cases. Regardless of its verity or lack of verity, such a charge, striking as it does at the very heart of our criminal justice system, possesses ramifications of a profoundly serious nature. Unfortunately, a persistent and pervasive mode of thinking frequently injected into contemporary cases indicates that the accusation may be of a nascent nature. Be that as it may, the accusation is repudiated by reigning case law and unsupported by any pleaded facts. Jackson's attempt to bolster it by singularly charging that it is "a common fact that had the Movant been a 'white' defendant, than [sic] he would *of* [sic] received lesser instructions . . ." is conclusional and far too gaunt to factually raise the asserted constitutional ground sought to be relied upon. One seeking relief by way of a Rule 27.26 motion must plead facts, not conclusions. *Smith v. State,* 513 S.W.2d 407, 411 (Mo.banc 1974); and *Bynum v. State,* 545 S.W.2d 720, 721 (Mo.App.1977). Reported cases involving charges of perfidy bottomed on claims of deprivation of "equal protection" by reason of racial prejudice, although at best only remotely analogous to the charge leveled by Jackson, are exceedingly stringent and demanding concerning the scope and nature of proof required to sustain such charges. See, generally: *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (exclusion of black jurors by the exercise of peremptory challenges); *Martin v. Texas,* 200 U.S. 316, 26 S.Ct. 338, 50 L.Ed. 497 (1906) (exclusion of blacks from grand jury service); and *Moore v. People of State of New York,* 333 U.S. 565, 68 S.Ct. 705, 92 L.Ed. 881 (1947) (exclusion of black jurors from petit jury service). Jackson's second ground, considered as it must be in conjunction with the scarcity of facts, if any, proffered in its support, did not warrant an evidentiary hearing.

 Jackson's third and final ground, ineffective assistance of counsel, was peculiarly susceptible of disposition as a matter of law. Counsel's failure to request the trial court to instruct the jury on the defense of duress is the gravamen of Jackson's third and final ground. The defense of duress,[3] with one exception, *State v. St. Clair,* 262 S.W.2d 25 (Mo.1953), is virtually a stranger to the reported case law of this state. Although duress or coercion was recognized in *St. Clair* as a defense to robbery in the first degree, the court carefully pointed out, at p. 27, albeit by way of dictum, that according to the "great weight of authority . . . coercion does not excuse taking the life of an inno-

2. One of the felonies enumerated in Section 559.010, RSMo 1969.

3. Duress or coercion as a defense was spelled out as follows in *State v. St. Clair,* 262 S.W.2d 25, 27 (Mo.1953):

 "The appellate courts of this State seem not to have dealt with duress or coercion as a defense to an otherwise criminal act. At least, we have not been cited nor have we found any such case. However, the question has been considered with some frequency in other jurisdictions. Numerous cases are cited in Wharton's Criminal Law, Vol. 1, § 384, p. 514. From these cases and others cited below it is established by the great weight of authority that although coercion does not excuse taking the life of an innocent person, yet it does excuse in all lesser crimes. *Nall v. Commonwealth,* 208 Ky. 700, 271 S.W. 1059; 15 Am.Jur., Criminal Law, § 318, p. 16. But, to constitute a defense to a criminal charge, the coercion must be present, imminent, and impending and of such a nature as to induce a well grounded apprehension of death or serious bodily injury if the act is not done. Threat of future injury is not enough. Nor can one who has a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily injury invoke the doctrine as an excuse. [citing cases]."

**820**

cent person . . . ." The common law has steadfastly refused to recognize any compulsion, even the threat of death, as sufficient to excuse taking the life of another. 22 C.J.S. Criminal Law § 44, p. 135. Legal recognition of duress as a defense to crimes other than homicide necessarily assumes a working hypothesis that a harm or crime of greater magnitude is avoided when the subjected person succumbs to the duress. This hypothesis disappears when duress is sought to be invoked as a defense in a homicide case. The instant record discloses that during the course of robbing a motel the owner, Mr. LacKamp, was shot and killed by Jackson. According to Jackson, one of his companions in the commission of the robbery, Tinsley, told him he would kill him if he didn't kill LacKamp. This is not a case where one is coerced into the commission of a lesser felony and a homicide is committed by a companion during the perpetration of the lessor felony. As Jackson pulled the trigger that fired the fatal shot, his criminal responsibility does not turn on the agency of another. With the record impressed with these indelible facts, the focus of inquiry is restricted to whether duress was available to Jackson as a defense for shooting and killing Mr. LacKamp. This court concludes that the dictum in *State v. St. Clair,* supra, and sound logic effectively join forces to vitiate Jackson's contention that the defense of duress was available. Having concluded that the defense of duress, as a matter of law, was unavailable, the trial court stands fully exonerated for refusing to grant Jackson an evidentiary hearing on his Rule 27.26 motion.

Judgment affirmed.

All concur.